The next case is the U.S. v. Percy William Travillion. Ms. Arkel. May it please the Court, my name is Louise Arkel, and I'm here from the Office of the Federal Public Defender's Office, and I represent Percy Travillion. If I may have three, may I reserve three minutes for rebuttal? That request will be granted. Thank you. When Mr. Travillion's counsel began his closing argument, he posed, he asked this question of the jury. He said, the central question you have to ask yourselves is, do you believe Michael Goode? Do you believe Michael Goode? He recognized that the central question, that the verdict on the possession with intent to distribute charge, came down to a credibility contest. Do you believe Michael Goode? Do you believe Percy Travillion? Wasn't the proof overwhelming in this case? It wasn't overwhelming on the possession with intent to distribute charge. The possession with intent to distribute charge came down to Mr. Goode saying it was crack, Mr. Travillion saying it was heroin. And he was cross-examined by counsel about things that went to his ability to remember. Wouldn't this be cumulative? No. He was cross-examined. Mr. Travillion's counsel certainly cross-examined Mr. Goode on certain things. I would say the primary things he did was follow up. The government had brought up Mr. Goode's drug history. He followed up a little bit on the drug history. He followed, he asked about, he was attempting to establish the defense was essentially that Mr. Travillion was not a member of either conspiracy and that it was heroin on those. His cross-examination tended to be more general. There were specific avenues of cross-examination and things to establish that were raised in the prior trial testimony of Michael Goode. Those were not followed up on. There was the issue of Mr. Goode's mental health. There were the issues of Mr. Goode dealing small amounts of particularly heroin but other quantities too. And there was the particular memory failure and the prior inconsistent testimony on the Roscoe Thompson transaction. Not only, and I think it's important to note that not only would those avenues of testimony that were available from the prior testimony, they would have done three things, cross-examination and on those issues would have done three things, discredit Michael Goode, corroborate or reinforce Mr. Travillion's testimony and perhaps most significantly protect Mr. Travillion against what was a very damaging avenue of attack that the government took. Not only, it didn't come down to sort of an even playing field, one man's word versus another man's word. The government took various opportunities to mock Mr. Travillion's testimony, to mock his defense. Mr. Goode didn't deal in single bundles, did he? And Mr. Travillion said, I don't know what he does with other people. I know what he did with me. Well, trial counsel should have known what he did with other people. It was abundantly clear from the prior transcript. He dealt in single bundles. He gave a single bundle to Shermaine Hunter. He paid his handyman in $20 worth of heroin sometimes. Michael Goode was not a one size, you know, I only deal in 1,400 brooks or none at all or I only deal in two brooks or none at all. He dealt in whatever people wanted. He gave personal use amounts to his girlfriend. He gave $20 worth to his handyman. It was important to protect the failure of Mr. Goode's, of Mr. Travillion's trial counsel to protect Mr. Travillion in that respect was very, very significant. It made, it had the potential, and I think it did, make Mr. Travillion's defense look somewhat desperate, somewhat ridiculous, silly was the government, the word the government used frequently. I think Mr., I think it's clear that Mr. Travillion met the deficiency prong on his ineffectiveness, on his ineffectiveness. Why do you say that? Because following, using the factors that were outlined in McGee, which I thought were very, a very good outline, you look at the type of evidence, the type of evidence. It was the prior trial transcript of the main witness against your client on that charge. I can't conceive of a strategy that would suggest you not get and review and know, you know, significant aspects of that trial testimony and be prepared when he says this, I am going to ask him about that. And then we are being asked questions about an event four years ago. Imagine yourself without drug history and fried brain cells being asked what happened four years ago. It would be very difficult. Doesn't that, doesn't that sort of raise it? It sort of raises it, sort of being the operative word. It wasn't specific. I think the more specific the impeachment evidence gets, the more relevant and important it becomes to Mr. Travillion's specific defense. You didn't remember a particular transaction, or actually in the second trial you didn't remember it, in the first one you did. Which is it now? But he's entitled to a fair trial, he's not entitled to a perfect one, right? He's not entitled to a perfect trial, but he is entitled to be, to the most basic, to investigation or to a decision, why isn't that investigation necessary? That's what the court was supposed to determine below and didn't determine, did not definitively determine, was it a strategy not to get it? Was it a strategy not to review it? That was never determined. I can't conceive, to be honest, of a strategy that would say don't review that testimony. In absence of a hearing by the district court, is the government entitled to a presumption of validity for the alternative strategies that they assert? I don't think so, because first of all, there was no, Mr. Travillion alleged that Mr., that his trial counsel did not get the transcripts, so, and I want to correct that, I had said in my brief that there was no indication that Mr. Travillion said he asked him to get the transcripts. And in fact, it is in his pro se petition. And I want to emphasize, Mr. Travillion was pro se here. He did not have the assistance of counsel at the district court level. I think that's significant. I think the deficiencies and the gaps in cross-examination were not fully fleshed out, which I also think affected the prejudice evaluation. But I want to answer your question, are they entitled, no. I don't think you can, I don't think there is a strategy to infer that, that permits not getting the trial transcript of the main witness against your client. And isn't the counsel allowed to pick and choose as to which strategy they want to emphasize in a trial? I suppose within, assuming there was a reasonable investigation, this was not a difficult, again going back to the McGee factors, this wasn't difficult evidence to obtain. This was on. And so your sentence was 15 years, 10 months, do I have that right? Good, yes. And your testimony here is designed so that you may very well get a reduction in that sentence. Good, yes. That's pretty powerful, isn't it? No, I think it's powerful to say... We've seen this, I've been doing this for more years than I could count on the fingers of both hands and toes. That's a pretty powerful thing. It's almost a standard thing in just about any cooperation situation, isn't it? It is standard. And therefore it wasn't necessarily particular to Mr. Trevelyan's defense. It is standard. Every other non-government witness, every non-agent witness, I should say, was a cooperator. It is standard. I don't think that speaks to effective defense in Mr. Trevelyan's case because there were those avenues, specific avenues to cross. You had a mental health history. But he said, not referencing the tape recordings, as you sit here today, are you able to give us specific dates, specific amounts of drug deals that you had with Percy? Good, no. That's an admission. He couldn't remember. But he didn't say, you had changed your testimony about the particular drug at issue in a particular transcript between one trial and the other. Let me ask you about your second approach, the two conspiracies, 9 and 13. Wasn't the object of each of those conspiracies a different offense? One involved crack, cocaine. The other involved regular cocaine. Isn't that right? No. What? Well, I'm sorry. They were different objects, I should say. Different objects. But same agreement. Conspiracy is agreement. Conspiracy is conspiracy. We know that. Suppose, as part of this offense, you had a person that was interfering with this conspiracy. And all the conspirators agreed that the same people, same time frame, same location. First chance we get, we'll kill them. And they killed him. Are you saying that they couldn't be charged with conspiracy to distribute drugs and conspiracy to commit murder? It's a different agreement. The government has yet to come forward with, the government says it can come forward with... So you're saying they could, obviously. Now here we have one conspiracy, and the object of it is to distribute crack, and the other one is to distribute regular cocaine. They're two different offenses, right? There may be, there could be two different offenses. There could be one agreement. There are two different offenses in 21 United States codes. They're in separate places, and they're punished differently. Now if you don't indict in two separate counts, how are you going to know which one the jury convicted them of? It could be crack. It could be ordinary cocaine. It could be both. You've got to know that, don't you? But you can have interrogatories pass the jury. Aren't interrogatories disfavored? Aren't there claims that it leads the jury inappropriately into a guilty verdict? I think that is the way... That's the law, isn't it? But that is a way you can deal with it. Isn't there a way around that, just to have two counts? It's maybe a way around it, but if there is one agreement, then you cannot go around it. And I think what happened here at the Leotard Factors, there was... But you could do it if there was a murder. Look, you have two different objects of the conspiracy here, two separate crimes. But you may have only one agreement. You cannot, the law is clear that you cannot split one agreement into two. And I think the issue here is that the Leotard Factors were met. We should have heard from the government what the two things were. Okay, now let's assume that your argument initially is correct. And let's assume that had counsel filed the motion for dismissal on the ground of double jeopardy on one of the counts, he would have won. But we're here at a different stage in the proceeding now. Isn't it possible that counsel, knowing that there was a question about what good sold on December 16th to Trevelyan, that his strategy was that, look, I'm going to keep both of these counts out there, and I'm going to argue that you can only convict on the Potter count because there's insufficient evidence on the other, and I'm going to get him the lesser sentence. Wasn't that potentially a reasonable strategy? I think that's what the government suggests. And why is that wrong? Well, a couple of reasons. Because if it's not wrong, it knocks out the first prong of Strickland. Okay, can I, my time is up, but is it okay? You can go. I think a couple. You're being generous today. Okay, thank you. If I could answer in two layers. I think, one, the government supplies that strategy, and I think this court has cautioned. It said that's one of the very reasons an evidentiary hearing is required. You don't want the government supplying what the strategy might have been. Number two, and I think more important and more specific to this case, is there's no evidence that that was the strategy. And again, okay, if I can break that down, I promise to be fast, into two parts. One, even if he had been acquitted on the crack conspiracy and convicted only on the powder, he could have ended up with the same sentence because of the relevant conduct or even acquitted conduct aspects of the guidelines. So it's not a strategy that may have limited his sentencing exposure. Number two, that, I don't think the record indicates that was the strategy. The strategy was, he's not a member of either conspiracy. That was the crux of his strategy on that. Okay. So that would be my short answer to that. And does that. All right, then we'll have you back on rebuttal. Thank you. Thank you. Mr. Dilla. May it please the court, Jane DiTillo for the United States. I will start with. You don't disagree with the fact that an increased fine can be punishment for double jeopardy? It is punishment, but that doesn't mean it constitutes prejudice under Strickland. Okay, go ahead. So to follow up on that point, Mr. Trevelyan cites no cases which have no authority for the proposition that the extra punishment of a special assessment and the collateral consequences of an extra conviction without additional time served constitutes prejudice under Strickland. And that's very important also in considering the reasonableness of counsel's strategy because you can consider the low risk that he was taking in, even if that is prejudice, in assessing whether his strategy was reasonable. And that is, that's in Glover United, the United States, which the district court cites. As to whether there was a strategy and whether there's record evidence. Is there a presumption here? There is, we begin with a weak presumption of strategy.  He stated at the charging conference, there's clear consideration of the idea about whether this is multiple conspiracies or a single conspiracy. He said at the charging conference that he wanted to be able to argue for acquittal on the crack charge as a separate, independent basis for acquittal. So I think that is evidence of the strategy. There is also reference in the district court's opinion to another ground for relief that Mr. Trevelyan brought in his original petition. And that's, he argued that counsel was deficient for telling him to testify that he used some of the drugs personally to bring the weight down for sentencing. That further bolsters the record evidence that there was a strategy of sentencing harm reduction. In considering whether this strategy is reasonable, we have to consider all of the circumstances. And that, and those include the very strong evidence that there was a drug conspiracy. The evidence that Mr. Trevelyan was engaged in the drug conspiracy. That's even just looking at the recordings of the phone calls. And we can also, again, consider the very low risk that he was taking in terms of there was no extra sentence for this second conspiracy charge. In addition to that, the prejudice, there is no record for determining whether, if there was a pretrial evidentiary hearing on motion to dismiss on double jeopardy grounds, we don't know what the evidence would have been about the broader scope of the multiple conspiracies. And Young tells us that there is evidence that, the evidence that is relevant to proving multiple conspiracies can be very different than, or somewhat different than the evidence relevant to proving a defendant's guilt. And I think a good example of that principle would be hypothetically looking at Mr. Goode. He was, there's no question that he conspired to sell powder cocaine. He conspired to sell crack cocaine. And he conspired to sell heroin. And it was all for the purpose of him making money. That doesn't foreclose the, a finding that he had separate agreements with different people to, with the objectives of selling those individual drugs. And as you said, Judge Van Antwerpen, there, those are separate objectives. And Smith tells us that the separate goals or objectives is perhaps the most important thing to look at when assessing whether there are separate agreements. We have an old case here, U.S. versus Becker, 892 F. 2nd, 268, that says, and it was Judge Sloboda who wrote the majority opinion, that you, you look to the object of the conspiracy. That's a very important factor. And in that case, too, there were found to be separate agreements involving the same drug, marijuana, so it really isn't. If one was imported, the other or something. Right, exactly. So I think that there is. I want to go back to one point that you answered, Judge Van Antwerpen. You know, Rutledge versus the United States recognized that the, that there could be, concurrent sentences do provide for double punishment. Now, even though there hasn't been a decision as to whether or not that's applicable on habeas, are you arguing it is not? I, I don't think that, I don't think that it is, especially in this case. The. I mean, are you arguing it's not prejudice? One case that, not, not under Strickland. One case that I found. Why should there be a distinction? One case that I found in preparing for argument, which I won't get into the details of, in fairness to opposing counsel, because I didn't include it in my brief, but I'm happy to supplement with a 28-day letter with the court's permission, is Scott v. Illinois, where the Supreme Court, it's a 1979 case, where the Supreme Court held that the, there is no right to counsel in state courts if no sentence is imposed, even though there, in that case, there was a conviction and a fine. So I think that the question, when we're looking at Strickland, this is ultimately about the right to counsel. And that, Scott v. Illinois, it's not a perfect match. It's about state cases. It's, there was a punishment of, there was a sentence imposed, although it was concurrent. But I think that, that informs the question of what is prejudice in the, in the Strickland context. I would argue that notwithstanding subsequent jurisprudence, Rutledge and others, that Scott would still be good law on this question. Yes. And so I, I think that Scott informs this question. I don't think Scott speaks directly to whether there's prejudice under Strickland in a, in a federal case where there was a concurrent sentence imposed. But I think that it definitely. I would invite you to submit that 28-J letter to give counsel. I will do so. An opportunity to respond. Doesn't habeas generally contemplate, didn't it, I don't know if it's still the rule, but didn't it generally contemplate that a person had to be in custody? I just thought of that. So I warn you, it's. Yes. I, that, that is true. That's, and, and in fact, I believe that habeas petitions are, are moot. Once. If you're not in custody, as I recall. Right. Isn't supervision enough nowadays? I think I, I believe it is. I can also look into that. I believe that supervision is enough, but I, it, there is, there has to be some sort of deprivation of liberty. All right. Let's go to the first question. Sure. Period across examine Mr. Good. So I think that this is an issue that is disposed of on the prejudice prong very easily to briefly address the deficient. Would you agree that the, because there was no evidentiary hearing under Roland versus Vaughn, I believe you're not entitled to the presumption of validity. About the strategy? Yes. Well, first of all, I don't think that I think that there is a corollary to that rule in general. That is true. But in I believe it's Thomas V Varner in note 10 it states that if a strategy is objectively reasonable, no evidentiary hearing is required for this court to find that it is a legitimate strategy. But here, this, this issue really isn't about strategy. Um, this issue is about whether there is, there was prejudice and failure to cross examine on issues that were completely collateral to the question of guilt that were cumulative to other. You're willing to concede the first part. I think that if this court finds that there, that there was prejudice, then I think a remand for an evidentiary hearing on whether there was strategy and allowed to go to the second part without considering. Yes, absolutely. So you're going to continue with that. You think if we find that there was prejudice, you think there should be an evidentiary hearing? I do. Yes. Because we, we don't know. Um, I mean, I sort of read that from your brief without you saying, okay, appreciate you letting us know your position. And I, I would just to follow up on that. Um, I, it absolutely. Um, if you look at the proof of trial, you have admissions that from the defendant that he was new of the broader conspiracies that he regularly. Purchased cracked, sold both crack and powder that he purchased drugs from Michael. Good. Um, you have him on tape, uh, you have evidence on those phone calls of mutual trust and from his testimony and other's testimony of mutual trust, regular course of dealing. The evidence was extremely strong in this case. And to answer, um, Travolian's argument, Mr. Travolian's argument that it's different for the possession count about whether that involved heroin, um, on the December 16th phone call involved heroin as opposed to cocaine. If this was a direct appeal, you'd be saying harmless error, right? Absolutely. Um, but I also think for that, for that particular count, the evidence was overwhelmed. What was very strong that this was, um, indeed crack cocaine. First of all, you have corroboration of Mr. Good's testimony that crack cocaine was selling for $900 an ounce. The, um, agent Jimenez testified that James Biven, another associate was stopped after selling good two ounces of crack cocaine with $1,800 in his, in his possession in cash. So that shows that the, the price that was discussed on the call back and forth of $900 an ounce, you had five for a total of 4,500. That corroborates Mr. Good's testimony that that was crack cocaine. You also have Mr. Travolian admitting that there was a regular course of dealing in cocaine. Um, it doesn't really make sense if this was a one-off test to see whether he could, uh, sell heroin that cocaine wasn't mentioned when good was going out of town or that, that, that there wasn't any sort of reference to the fact that this was a different type of drug. Finally, I'd also like to address the idea that, uh, counsel should have cross-examined on goods testimony that he occasionally sold bundles or bricks or other personal use amounts. Um, the, uh, first of all, even if that were true that he might have, have sold that to Mr. Travolian, he wouldn't have necessarily called before going out of town to make sure that he had these extra two bundles at $90 a bundle. Um, second of all, I, uh, defense counsel, if he had those, that transcript in front of him could not have asked Mr. Good, you admitted to selling bundles before yes or no, and then, you know, stop the evidence at that point, what would have come in in Mr. Good's clarification or the government's redirect was the fact that Mr. Good was extremely reluctant to do so. Was he extremely reluctant to go into his stash to risk being caught carrying drugs for such a small amount of money? And that is what he testified to at the Ferguson retrial and the people that he sold bundles to. That was his essentially a sister-in-law, his longtime girlfriend, mother of his children's sister who had a serious personal addiction. And even when she asked for it again, he, you know, demurred and asked her to, to ask someone else for the drugs because he didn't want to sell that, that small amount. So I think that that's really, um, you know, these are, again, these are all, as the district court found, these are all narrow instances of that could have been used on cross-examination. The, I want to say one thing about the standard of review for this point, all of the cases that I've been able to find, to find, uh, give the standard of review for these ineffective claims as de novo review in applying the standard. But I would argue that in this case, this is not a district court looking at a state conviction, at the trial record from the state conviction. This is a district court that sat through, um, the trial, the entire trial of Mr. Trevelyan and the trial of the Ferguson retrial where this cross, this other testimony took place. And she is, then Judge Conte is assessing the possible prejudice based on credibility determinations. And I would argue that in, in this type of very fact heavy application of the prejudice standard, that some deference at least is owed to the district court's assessment of whether these issues would have impacted the credit, his credibility, or the overall impact of the evidence. It's not really a petition and habeas. It's really a motion under 2255 to vacate, set aside, or correct sentence. It's a motion filed in an existing case before a judge who's familiar with the trial. Exactly. And, and I understand the reasoning for in, in 2254 cases for not giving deference to those, that analysis of the district court where the district court didn't see the trial, but this is different. Um, and again, I wasn't able to find authority for that point, but I think that, that, that that is, is certainly a valid, um, reason to give deference based on this court's general jurisprudence. Um, and again, I, you know, on this cross-examination point, there is, um, there was other corroboration of, of Michael Goode's testimony in small details and the broader testimony that he sold crack, uh, cocaine to Mr. Trevelyan. There, he was already impeached on his, as you mentioned, his significant drug use, his incentive to cooperate, to get a reduction in sentence, and his just generally being a drug dealer. Um, he was, you know, which is by necessity a deceitful profession. Um, and then, and I, I just like to say, um, one more thing about the, um, just on the double jeopardy issue. I think that counsel's, the, uh, reasonableness of counsel's strategy really has to be assessed under Strickland in light of all of the circumstances. And here, in light of the extremely strong evidence and the very low additional punishment, which, if it even constitutes prejudice, um, $100 for the extra account. Um, so, I mean, really the question under Strickland was, was, was this a fair trial? Did he have effective counsel? What I think that the answer under the double jeopardy point has to be yes. Um, and if the court has any other questions. Fair, not perfect. Exactly. That is a standard. There are, let me ask one question. There are some cases, I think from other circuits, let's say, uh, just being subject to another conviction is prejudice. Um, in the, in the 2255 context. I do, I do agree that that is extra punishment under Rutledge. Um, I'm not familiar with cases that say that it is, uh, it is, it constitutes prejudice under Strickland. Thank you, Mr. Taylor. Thank you. I just have a couple of points I would like to respond to. Um, one being the standard of review question. Strickland specifically talks about why it sets a reasonably low threshold for, for the prejudice and ineffective, on an ineffective assistance. It's because you want to make sure that it's not like a new trial and the interest of, in finality becomes more important. Here, the issue is, did he get a fair trial below? Did he get constitutionally protected effective assistance of counsel? So it is a reasonably low threshold and I think Mr. Trevelyan met it. The government talks about, um, the prejudice determination and I appreciate their concession as well, that if you find prejudice, you need an evidentiary hearing. The prejudice determination here was made without a full airing of the deficiency prong. Mr. Trevelyan did not have counsel below. And I think the, a disturbing component of this case is that what this means is that he has been unprotected and unassisted by counsel in important, in an important respect twice now. First at trial without getting that. Again, I think perhaps everybody, every trial lawyer would want to know, why didn't you get that transcript? That main witness, it's a script. You can't raise ineffectiveness of counsel in a 2255 proceeding. Can you? I'm sorry? You can't raise ineffectiveness of counsel in conducting a 2255 proceeding because you don't have a right to counsel. Isn't that so? Oh, correct. Oh, I see what you mean. Yes. But I do think in this case, that's why you need an evidentiary hearing is favored. Well, no, wait a minute. If you can't use that as a basis. Well, go ahead. I'm sorry, I might not be understanding. I think it's a troubling aspect of it. I think counsel would have helped. It might be troubling, but it's not. I see what you're saying. Yes. It's not required. Correct. Right. Regardless, I think the, the district court did not have, did not sort of review those transcripts. But the judge knew the trial he presided. But guilt is individual to Mr. Trevelyan. The fact that, that other defendants were convicted on some of the same evidence does not mean that Mr. Trevelyan was not entitled to be, to have a, to have full effective assistance of counsel. That charge came down to Mr. Good's word against Mr. Trevelyan's word. Both counsel recognize that. I think government, the government. He could have done more, but it's not like he didn't do anything. It's not like he didn't do anything. And there may have been a strategy there. There may have been, but we don't know. And I challenge, and I don't believe the government has come up with a strategy of not reviewing and knowing and using. You started out talking about standard of review. Mr. Tillow said that at least in this case, since we're dealing with a 2255, that there should be some deference to the district court's determination based on the record that the district court was aware of. I don't. What's your response to that? I think she's basing that on the fact that she sat through the other trial, but I don't think that adds to deference. I think because the Mr. Trevelyan was entitled to an individual determination of his guilt on that count, based on the evidence presented on that count. I also think because cross-examination is so central to the system, it's not only embedded in the idea that he should get the transcript of the main witness against him. It's embedded in the confrontation clause. It's, there is a reason some evidence doesn't come in. It's because you haven't had the opportunity to cross-examine that witness. Without that, I think to say that there was no prejudice here is essentially to diminish, to say, to treat cross-examination as just another tool in the toolbox. Oh no.  He was denied a critical, critical avenues of impeachment of, and I think I've made my, I think I've said that numerous times. So unless you have other questions, I will. Thank you, Ms. Arkel. Thank you. Thank you, both counsel. I want to ask Ms. Arkel, you're from the Federal Defender's Office in New Jersey. Yes. Do you handle these on a conflict basis because of the allegation of ineffective assistance? It's actually, and I'm glad you asked. It's sort of a new project that wherever trial counsel below is not handling the direct appeals in some cases and 2255s, the circuit is now distributing them among the different offices. And I would like, since you were asked, I would like to say there have certainly been challenges, but I think we are all enjoying it. And I want to add specifically that we have had nothing but cooperation from the government offices in all cases. So I really, we all really appreciate it. And this would be as a substitute for the appointment of CJA counsel? Yes. Yes. Okay. Although if for whatever reason an office didn't take it, I assume they would appoint CJA. Okay. I see. I just was curious because I saw that, I assume, but I didn't know that was a new pilot. So I commend the offices for trying to do that, particularly during this time when resources are tighter than ever before. Thank you. Okay. Thank you. Thank both counsel for excellent arguments. We'll take the matter under advise.